UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------

NEW YORK PRODUCE TRADE
ASSOCIATION, INC.

               Plaintiff,

          -against-

LOCAL UNION NO. 202, AN AFFILIATE OF
THE INTERNATIONAL BROTHERHOOD
OF TEAMSTERS,

             Defendant.

---------------------------------------------------------

Index No: 08-cv-4230
(A.K.H.)

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

Respectfully Submitted,

Cary Kane LLP
Counsel for Defendant
Local Union No. 202,
  an affiliate of the
  International Brotherhood
  of Teamsters
1350 Broadway, Suite 815
New York, NY 10018
(212) 868-6300 (Phone)
(212) 868-6302 (Fax)

# TABLE OF CONTENTS

Table of Authorities ........................................................................... i

**PRELIMINARY STATEMENT**................................................................ 1

**STATEMENT OF FACTS**.................................................................. 1

**1. The Parties**................................................................... 1
        Collective Bargaining Agreement, Ex. "A", Complaint ...... 2

**2. Summary of Action**.............................................................. 2
        Letter from Kane to Tramutola, 1/31/2008, Ex. "D,"
           Complaint ...................................................... 2

**3. The Financial Condition of the UTF**.......................................... 3
        United Teamster Benefit Fund Actuarial Status Report,
           Ex. "C", Complaint ............................................. 3

**4. The Collective Bargaining Agreement** ........................................ 4

    **A. The Grievance and Arbitration Language**........................... 4
        Collective Bargaining Agreement, Ex. "A", Complaint .......... 5-6
    **B. The Article Involved in the Particular Dispute**................. 6
        Collective Bargaining Agreement, Ex. "A", Complaint ......... 7

**5. The UTF's Trust Agreement**.................................................. 7

    **A. Authority of the Trustees to Administer the UTF**.............. 8
        Union Welfare Fund, Local 202 Restated Agreement and
          Declaration of Trust, Ex. "B", Complaint...................... 8
    **B. Authority of the Trustees to Reduce Benefits**.................. 9
        Union Welfare Fund, Local 202 Restated Agreement and
          Declaration of Trust, Ex. "B", Complaint...................... 9
    **C. Authority of the Trustees To Raise Contributions**.............. 9
        Union Welfare Fund, Local 202 Restated Agreement and
          Declaration of Trust, Ex. "B", Complaint...................... 9
        Collective Bargaining Agreement, Ex. "A", Complaint ......... 9
    **D. Deadlock Provisions**.......................................... 10
        Union Welfare Fund, Local 202 Restated Agreement and
          Declaration of Trust, Ex. "B", Complaint...................... 10

**STATEMENT OF FACTS (continued)**

**6. Procedural History of the Dispute…………………………………**                11
    Letter from Kane to Tramutola, 1/31/2008, Ex. "D",
      Complaint …………………………………………………               11
    Letter from Goldsmith to Cary, 4/14/2008,
      Ex. "H", Complaint ………………………………………               11
    Letter from Goldsmith to Union's Executive Board,
      2/15/2008, Ex. "E", Complaint ……………………………               11
    Letter from Cary to Goldsmith, 4/1/2008, Ex. "G",
      Complaint …………………………………………………..               12
    Letter from Goldsmith to Cary, 4/14/2008, Ex. "H",
      Complaint …………………… ………………………..               12
    Notice and Demand for Arbitration, 4/14/2008,
      Ex. "I "and "J", Complaint**…………………………………**               12

**ARGUMENT………………………………………………………………**                12

**THE COMPLAINT FAILS TO STATE A CLAIM UPON
WHICH RELIEF MAY BE GRANTED………………………………..**                12

**1. The Standard for Dismissal of a Complaint …………………**                12

**2. The Grievance is Arbitrable under the CBA…………………**                14
    Collective Bargaining agreement, Ex. "A", Complaint ………               15

**3. The Grievance is not Arbitrable under the Trust Agreement**                18

**4. The Request for Information and Procedural
    Arbitrability Defenses………………………………………**                20
    Letter from Goldsmith to Cary, 4/14/ 2008, Ex. "H"
      Complaint …………………………………………………               20

**CONCLUSION…………………………………………………………….**                22

## TABLE OF AUTHORITIES

### FEDERAL CASES

*1199 SEIU, United Healthcare Workers East v. Rite Aid Corp.*, No. 07 Civ. 4816,
2008 U.S. Dist. LEXIS 22679 (S.D.N.Y. 2008) ..........................................................15

*AT&T Technologies v. Communications Workers of America*, 475 U.S. 643
(1986) ....................................................................................................................14, 15

*In re Bristol-Meyers Squibb Sec. Litigation*, 312 F. Supp. 549 (S.D.N.Y. 2004) .............13

*Carey v. General Electric Co.*, 315 F.2d 499 (2d Cir. 1963) ......................................16, 18

*In re Elan Corp. Securities Litigation*, No. 05 Civ. 2860, 2008 U.S. Dist. LEXIS
25860 (S.D.N.Y. 2008) ............................................................................................13

*Feick v. Fleener*, 653 F.2d 69 (2d Cir. 1981) ....................................................................13

*ITT World Communications, Inc. v. Communications Workers of America*, 422
F.2d 77 (2d Cir. 1970) ...............................................................................................15

*International Longshoremen's Association v. NY Shipping Association, Inc.*, 403
F.2d 807 (2d Cir. 1968) ...............................................................................................18

*John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964) ...........................................20

*Johns Hopkins Hospital*, 273 N.L.R.B. 319 (1984) ..........................................................21

*Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982) ...........................................................21

*Layman's Inc.*, 268 N.L.R.B. 780 (1984) ..........................................................................21

*MI Installers and Furniture Service, Inc. v. NYC District Council of Carpenters
Pension Fund*, 476 F. Supp. 2d 387 (S.D.N.Y. 2007) .................................................18

*Mahoney v. Fisher*, 277 F.2d 5 (2d Cir. 1960) ..................................................................19

*Rapoport v. Asia Electrics Holding Co.*, 88 F. Supp. 2d 179 (S.D.N.Y. 2000) ................13

*San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959) .............................21

*Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364 (1984) .................................18

*Teamster United Parcel Service National Negotiating Committee v. United Parcel Service, Inc.*, No. 92 Civ. 5162, 1993 U.S. Dist. LEXIS 9999 (S.D.N.Y. 1993) ..........................................................................................................15

*In re The Arbitration of Controversies Between Barrett v. Miller*, 276 F.2d 429 (2d Cir. 1960) ...........................................................................................................19

*United Food & Commercial Workers Local 204 v. Harris-Teeter Super-Markets, Inc.*, 716 F. Supp. 1551 (W.D.N.C. 1989) .....................................................................21

*United Steel Workers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960) .............................................................................................................14,16

*United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564 (1960) ..................................................................................................................14

## FEDERAL STATUTES

National Labor Relations Act, 29 U.S.C. § 158 (a) (5) ......................................................21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------
NEW YORK PRODUCE TRADE
ASSOCIATION, INC.

                Plaintiff,                        Index No: 08-cv-4230
                                                         (A.K.H.)

          -against-

LOCAL UNION NO. 202, AN AFFILIATE OF
THE INTERNATIONAL BROTHERHOOD
OF TEAMSTERS,

                Defendant.
---------------------------------------------------------

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

### PRELIMINARY STATEMENT

Defendant Local Union 202, an Affiliate of the International Brotherhood of Teamsters (hereafter "Union") respectfully submits this memorandum of law in support of its motion to dismiss the Complaint for having failed to state a claim upon which relief may be granted pursuant to Rule 12 (b) (6) of the Federal Rules of Civil Procedure.

### STATEMENT OF FACTS

The facts herein are taken from the Complaint and the documents annexed thereto.

    1      The Parties

The Plaintiff, New York Produce Trade Association, Inc. (hereafter "Employer Association") is a signatory to a collective bargaining agreement with the Union requiring covered employers to *inter alia* make contributions to a health and welfare

benefit plan called the United Teamster Fund (hereafter "UTF"). The UTF, which is not a party to this action, provides medical benefits to members of the Union working for the employers represented by the Employer Association as well as to employees of other employers. *See* Complaint at Unnumbered Second Paragraph; ¶¶ 5 - 8; and *see generally* the Collective Bargaining Agreement between the parties annexed to the Complaint as Exhibit "A" (hereafter "CBA").

       2.    <u>Summary of the Action</u>

The Employer Association seeks an injunction against the Union preventing arbitration pursuant to the terms of the CBA over a grievance filed by the Union which asserts the Employer Association has failed to agree to raise the rate of contributions to the UTF as required under Article XXII of the CBA. *See* Letter from Daniel J. Kane, Jr. (hereafter "Kane") to Thomas Tramutola (hereafter "Tramutola"), dated January 31, 2008 and the Local 202 Grievance Form of the same date, together annexed to the Complaint as Exhibit "D". The Employer Association contends the grievance embodying the dispute between the Employer Association and the Union

> is not substantively arbitrable because (1) Local 202 lacks capacity to take such a claim to arbitration and (2) Article XXII [of the CBA] only permits arbitration relating to Fund contribution increases . . . to be brought by the [Employer] Association's Trustees or the Union's Trustees [on the UTF], and only then following a deadlock among the Trustees.

Complaint at Unnumbered Second Paragraph.

3.     The Financial Condition of the UTF

During the term of the present CBA the UTF experienced a swing in reserves of $30 million. When the CBA was signed in the beginning of 2004, the UTF had a $14 million surplus. As of November 30, 2007, the UTF had a deficit of $15.9 million. Complaint ¶¶ 30, 37. During this period, additional contributions were obtained in an effort to reduce the shortfall, Complaint ¶ 38, but they proved insufficient.

As the UTF's financial condition deteriorated, the UTF's Trustees repeatedly made significant benefit reductions to ameliorate the outflow of reserves. In 2004, deductibles and copays were increased. In 2005, eligibility for retiree health coverage was eliminated. In 2006, copays for various services were again increased and eligibility for benefit coverage eliminated for dependants if the employer's monthly contribution to the UTF was below $450. In 2007, life insurance benefits were reduced and accidental death and dismemberment insurance coverage was eliminated. Prescription drug copays were raised a third time and a cap was imposed on the benefit. Copays were imposed for laboratory benefits. Coinsurance was established for all medical services other than inpatient hospital. The minimum monthly contribution rate for dependant eligibility was raised to $600. And dental benefit coverage was eliminated for employees of employers contributing less than $700 per month. In 2008, the UTF's disability benefit was eliminated. *See* United Teamster Benefit Fund Actuarial Status Report, prepared January 25, 2008 by O'Sullivan Associates, Inc., Unnumbered Sixth Page, annexed to the Complaint as Exhibit ""C" (hereafter referred to as the "Actuary's Report").

The affect of the 2007 benefit reductions has improved the UTF's cash flow. For example, medical claims experience declined by 25% per month following the cuts and

prescription drug expenses decreased by about 22%. But, after the cuts the average <u>total</u> monthly contribution to the UTF declined by about 4% because of a decline in the total number of covered participants. Actuary's Report at Unnumbered Third Page, ¶¶ 3 - 5.

The UTF's <u>average</u> contribution rate from employers was about $600 per member per month in 2007. As of January 2008, the average per member per month contribution rate had risen to $620. This average increase is not enough, however, to continue to pay benefits and retire the debt within a reasonable period of time. According to the Actuary,

> It is imperative that the bargainers do everything they can to increase this average rate during this time period when the benefit cuts will be having the most impact. I would suggest the following three-year rates at a minimum to have a realistic chance of reducing the health claims payable with[in] three years.

> | Current Plan Year | $675 |
> |---|---|
> | Plan Year Ending 4/30/09 | $756 |
> | Plan Year Ending 4/30/10 | $846 |
> | Plan year ending 4/30/11 | $947 |

Actuary's Report at Unnumbered Third Page, ¶ 6

4.    The Collective Bargaining Agreement

A.    The Grievance and Arbitration Language

In Article XXVI of the CBA a grievance is defined broadly. "A grievance shall be defined as any difference, dispute, or violation relating to the interpretation or application of the terms of this Agreement." CBA at page 17. The Article provides a four step procedure for processing grievances which culminates in final and binding arbitration in the event the grievance is still unresolved after the third step:

> Procedure: The Employer and the Union shall cooperate to provide adjustment of grievances in a fair and reasonable

manner.    To carry out this objective the following procedure shall be followed:

(1)     Step 1:  In order for a grievance to be arbitrable the aggrieved employee must submit a written grievance to the Union and the Employer within seven (7) working days of when the employee reasonably should have become aware of the incident giving rise to the grievance.  No time limit shall apply to grievances that relate to wages and/or pension and welfare contributions.

(2)     Step 2:  The Union and the Employer within seven (7) working days of receipt of the grievance shall meet and try to resolve the grievance.

(3)     Step 3:  If the grievance remains unresolved the grievance shall be submitted to a Labor-Management Grievance Committee.    The Committee shall consist of at least two (2) designees of the Association and at least two (2) designees of the Union.  The Committee shall meet at least once per month, the Committee may meet more than once per month if the Committee so desires.  The Committee shall hear the grievance and may give a recommendation to both the Union and the Employer involved.  The recommendation is non-binding either on the Union or the Employer involved.

(4)     Step 4:  If after the Labor-Management Committee meeting the grievance remains unresolved the grievance may be referred by the Union or the Employer to an arbitrator that both the Union and the Employer mutually agree upon.  If an arbitrator cannot be agreed upon the matter shall then be referred to a panel of arbitrators which the Union and the Association have mutually agreed upon herein, and at such other various times during the period of this Collective Bargaining Agreement when the parties so mutually decide, and such panel shall be made part of herein.  If the matter involves the termination of an employee then members of the panel shall be selected upon their availability for the sole purpose of expediting the

> matter to a hearing.  The arbitrators' decision shall
> be final and binding

CBA at page 17.

The CBA does not contain language specifically limiting the applicability of the grievance and arbitration procedure to any part of the CBA.  *See*, *generally*, the CBA.

### B.    The Article Involved in the Particular Dispute

Under Article XXII of the CBA, the employers making–up the Employer Association are required to make contributions to the UTF.  Complaint ¶¶ 10, 11.  Article XXII sets forth a schedule of daily contribution rates to be paid for each day a covered employee works, to a maximum of 5 days in any one week.  The specified daily rate increases each year the CBA is in effect by a minor amount, either 80 cents or $1 per day.  The current rate is $29.885 per day.  The Union's grievance seeks an arbitrator's decision imposing increases in the CBA's effective monthly contribution rates in accordance with the actuary's recommendation.   *See* Complaint ¶ 17; Actuary's Report.

In the Union's opinion, Article XXII contains language requiring the Employer Association to agree to higher rates because of the financial exigencies of the UTF.  Specifically, the Article provides that:

> The Association and the Union shall have the right, during
> the term of this Agreement, to instruct their respective
> Trustees [on the UTF] to increase the contribution or
> reduce the welfare benefits in the event that the surplus in
> the Fund declines below $750,000, it being the intention of
> the parties that the Fund shall maintain a surplus of
> approximately $750,000 during the term of this Agreement.

Article XXII, CBA at 14.

The Article also provides a standard for how the Union and the Employer Association are to determine the increase in the rate of contributions beyond what is set forth in the CBA's present schedule: "In making their determination with respect to contributions, the parties shall be guided by the Accountants and Actuaries of the Fund." Id.

Language about the purpose and structure of the UTF also appears in this Article. This is the language the Employer Association relies upon as the basis for asserting the instant dispute is not arbitrable under the terms of the CBA:

> The United Teamster Fund shall be operated as a Trust Fund, the principal and income whereof are used for the sole and exclusive benefit of all the employees covered by this Agreement and other employees whose Employers are contributing to the Fund, and employees and officers of the Union and the employees and officers of the Funds and their dependants for whom contributions have been made to the Funds.
>
> The Association and the Union are represented as Trustees in the administration of the said United Teamster Fund and trust fund. The Association and the Union shall have the right to appoint their respective trustees and to remove their respective trustees with or without cause. Provision has been made for the selection or appointment of a neutral person or impartial umpire in the event that Trustees appointed by the Association and Trustees appointed by the Union deadlock on the administration of the United Teamster Fund. The United Teamster Fund shall be audited annually and the result of the audit shall be made available for inspection by interested persons.

Id.

### 5.   The UTF's Trust Agreement

There is no pending dispute among the UTF's Trustees over the issue of raising the Employer Association's contributions. Complaint ¶ 58. Even so, the Employer

Association contends that because the UTF's trust agreement provides for arbitration of disputes among the Trustees, the Union's grievance over an alleged breach of the CBA is not arbitrable in accordance with the CBA's arbitration provisions. Instead, the Employer Association contends the Union's grievance is only subject to arbitration pursuant to the UTF's deadlock arbitration provisions in the Trust Agreement, if and when, the Trustees should deadlock over the issue.

A.   Authority of the Trustees to Administer the UTF

Under Article V § 5.1 of the trust agreement "the operation and administration of the Welfare Fund shall be the joint responsibility of the Trustees appointed by any Employer and the Trustees appointed by the Union." Complaint ¶ 24. The Trustees are obligated to "act in their capacities strictly in accordance with the provisions of this Agreement and Declaration of Trust." Union Welfare Fund, Local 202 Restated Agreement and Declaration of Trust, at page 18 § 5.3, annexed to the complaint as Exhibit "B" (hereafter referred to as the "Trust Agreement")[1] The obligation of the Trustees to strictly abide by the provisions of the Trust Agreement in administering the UTF is reinforced by Section 2.2 of the Trust Agreement which provides that "[t]he Trustees hereby accept the Trust created hereunder on the terms and subject to the provisions of this Agreement and in accordance therewith shall hold in trust, manage and administer" the UTF. Trust Agreement at page 11.

---

[1]      In 2002 the name of the fund was changed to United Teamster Fund. Complaint ¶ 12.

B.    Authority of the Trustees to Reduce Benefits

Under the Trust Agreement, the Trustees have the exclusive authority to determine the plan of benefits, subject only to a collective bargaining agreement mandating that specific benefit coverage be provided.

> The Trustees shall, in their sole discretion, have full authority to determine all questions as to the nature, amount and duration of benefits to be provided to Employees hereunder on the basis of their estimate of the ability of the Fund to provide same without undue depletion or excessive accumulation, provided, however, that the nature, amount and duration of benefits shall not exceed nor be less than those that may be specified in the collective bargaining agreement.

Trust Agreement at page 15 § 4.1. The CBA does not mandate any specific level of benefits. Of course, however, there is the language previously recounted about the parties to the CBA having the "right" to jointly "recommend" benefit reductions to the Trustees to maintain a solvent UTF.

C.    Authority of the Trustees to Raise Contributions

The Trust Agreement does not have language giving the Trustees authority to unilaterally raise contribution rates.[2]  Indeed, under the Trust Agreement the rates to be paid can only be those provided for in the relevant collective bargaining agreement:

> Employers shall contribute to the Fund the amount required by the appropriate collective bargaining agreement between the appropriate Employer and the Union.  The rate of contributions shall be governed at all times by the collective bargaining agreement then in force and effect together with any amendments, supplements or modifications.

---

[2]    While Article VIII provides for six pages of provisions making it clear that the Trustees have various "discretionary powers and authority in the administration of the Fund," the power to unilaterally raise contribution rates is not included. *See* Trust Agreement at pages 24 – 30.

Trust Agreement at page 13 § 3.1.  (The question posed by the grievance in this case is whether the language about the parties to the CBA having the "right" to jointly[3] "recommend" increased contribution rates to the Trustees in order to maintain a solvent UTF constitutes an amendment, supplement or modification to the CBA that the Trustees are required to accept.[4])

D.   Deadlock Provisions

The Trust Agreement provides for a deadlock dispute mechanism in the event the UTF's Trustees cannot agree on a matter affecting the UTF's administration.  The Trust must be administered by an equal number of trustees appointed by the Union and by employers.[5]  Trust Agreement at page 17 § 5.1.  Decisions are made by majority vote of the Trustees present at a meeting.  Trust Agreement at page 21-22 § 6.5.  "In the event any matter presented for decision cannot be decided because of a tie vote, or because of the lack of quorum, at two consecutive meetings, the matter shall be determined as hereinafter provide in Article VII."  Trust Agreement at page 22 § 6.6.

Article VII of the Trust Agreement provides for the appointment of a deadlock arbitrator, selected by the Trustees or appointed pursuant to the rules of the American Arbitration Association.  Trust Agreement at page 23 § 7.1.  In making his decision, the deadlock arbitrator "shall have no power to alter, determine, amend, add to, take away

---

[3]     The CBA provides for a joint recommendation because it states: "in making their determination [(*N.B.*, a singular determination shared by the parties)] with respect to contributions, the parties shall be guided by the Accountants and Actuaries of the Fund."

[4]     As further discussed herein, the Union believes the question should be answered in the affirmative.

[5]     Under the Trust Agreement, the Employer Association does not have the sole right to appoint the so-called "Employer Trustees."  It only has the authority to appoint "at least two".  Trust Agreement at page 17 § 5.1.

from or disregard any provisions of [the Trust Agreement]. The decision of the arbitrator shall be final and binding upon the parties to the arbitration," namely, the Trustees. Trust Agreement at page 23 § 7.2.

      6.    <u>Procedural History of the Dispute</u>

On January 31, 2008, the head of the Union wrote the head of the Employer Association to submit a written grievance about the dispute. The letter recounted that the parties had previously discussed the Union's demand for increased contributions in accordance with the Actuary's Report but the Employer Association would not agree to it. Letter from Kane to Tramutola, dated January 31, 2008, annexed to the Complaint as Exhibit "D".

By letter dated February 7, 2008, the Employer Association proposed "a meeting be held [with the Union] to discuss the issue by no later than February 12, 2008, [but] ultimately, a meeting was set for February 20, 2008." *See* Letter from Willis J. Goldsmith, Esq. (hereafter "Goldsmith"), to Larry Cary, Esq. (hereafter "Cary"), dated April 14, 2008 annexed to the Complaint as Exhibit "H". By letter dated February 15, 2008, counsel for the Employer Association wrote the Union's Executive Board to say the Employer Association was now refusing to participate in the February 20, 2008 Labor Management Grievance Committee meeting about the Union's grievance and by refusing to participate, the Employer Association would now take the position that the scheduled meeting could not be "a meeting of the Labor-Management Grievance Committee established by Article XXVI of the CBA." Letter from Goldsmith to Union's Executive Board, dated February 15, 2008, annexed to the Complaint as Exhibit "E".

By letter dated April 1, 2008, counsel for the Union wrote counsel for the Employer Association to say the February 20, 2008 Labor-Management Grievance Committee meeting took place regarding the grievance but failed to resolve it. Counsel for the Union asserted the matter was now procedurally ripe under the CBA for arbitration and asked the Employer Association to propose an arbitrator to hear and decide the dispute. The letter went on to say that if the Employer Association failed to propose an arbitrator, the matter would be referred to an arbitrator on the panel provided for in the CBA. Letter from Cary to Goldsmith, dated April 1, 2008, annexed to the Complaint as Exhibit "G". Counsel for the Employer Association disputed the contention that the Labor-Management Grievance Committee meeting took place. Letter from Goldsmith to Cary, dated April 14, 2008, annexed to the Complaint as Exhibit "H".

On or about April 14, 2008, the Union, by counsel, submitted the unresolved dispute to arbitration before Martin Scheinman, Esq., one of the arbitrators on the panel provided for under the CBA. Complaint ¶ 61; *see* correspondence in Exhibits "I" and "J" annexed to the Complaint.

On May 5, 2008 the instant Complaint was served on the Union. The Union timely responded by filing the instant notice of motion to dismiss.

## ARGUMENT

### THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

1.    The Standard for Dismissal of a Complaint

"In evaluating a motion to dismiss for failure to state a claim, the Court must 'accept as true all factual allegations in the complaint,' and draw all reasonable inferences

11945-1

in favor of plaintiff. *Walker v. City of New York*, 974 F.2d 293, 298 (2d Cir. 1992). Accordingly, "dismissal is … proper [where] … 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Ellis v. Civil Service Employees Association, Inc., Local 1000, No. 95-cv-105, AFSCME, AFL-CIO et al.*, 1995 U.S. Dist. LEXIS 19673 at \*4; (N.D.N.Y. 1995)

> In making its determination on the motion, the Court "may disregard a plaintiff's "legal conclusions, deductions or opinions couched as factual allegations." *See e.g., In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). The court is also not required to credit conclusory statements unsupported by factual allegations. *See, e.g., Otor, S.A. v. Credit Lyonnais, S.A.*, No, 04 Civ. 6978, 2006 U.S. Dist. LEXIS 64885, 2006 WL 2613775, at \*2 (S.D.N.Y. Sept. 11, 2006); *see also Davy v. Jones*, No. 06 Civ. 4206, 2007 U.S. Dist. LEXIS 35965, 2007 WL 1378428, at \*2 (S.D.N.Y. May 11, 2007) ("[B]ald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations, and will not suffice to defeat a motion to dismiss.")
>
> \* \* \* "The court need not accept as true an allegation that is contradicted by documents on which the complaint relies." *In re Bristol-Meyers Squibb Sec. Litig.*, 312 F. Supp. 549, 555 (S.D.N.Y. 2004); *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) ("If these documents contradict the allegations of the amended complaint, the documents control.").

*In re Elan Corp. Securities Litigation*, No. 05 Civ. 2860, 2008 U.S. Dist LEXIS 25860 (S.D.N.Y. 2008) (emphasis added). *See also Feick v. Fleener*, 653 F.2d 69, 75 (2d Cir. 1981) ("Since the documents upon which appellants based their claim show on their face absence of any grounds for relief, dismissal was proper.").

13

The documents relied upon by the Union in support of its motion to dismiss are all annexed to the Employer Association's Complaint. To the extent allegations in the Complaint are conclusions or opinions or contradicted by the language of the CBA and/or the UTF's Trust Agreement, the allegations should not be treated as well pleaded facts by the Court. The undisputed documentary evidence before the Court should control.

2.    The Grievance Is Arbitrable under the CBA

Examination of the relevant language in the CBA can leave no doubt about the grievance being substantively arbitrable.

> The principles governing the arbitrability of labor disputes are well settled.
>
> First, since "arbitration is a matter of contract … a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steel Workers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).
>
> Second, "the question of arbitrability – whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance - is undeniably an issue for judicial determination. Unless the parties clearly and unmistakable provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the Court, not the arbitrator." *AT&T Technologies v. Communications Workers of America*, 475 U.S. 643, 649 (1986).
>
> Third, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T Technologies, supra*, at 649-50 (quoting *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 568 (1960).
>
> > Finally, it has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that 'an order to arbitrate the particular

> grievance should not be denied unless it may
> be said with positive assurance that the
> arbitration clause is not susceptible of an
> interpretation that covers the asserted
> dispute. Doubts should be resolved in favor
> of coverage.'

> *AT& T Technologies*, *supra*, at 650 (quoting *Warrior &*
> *Gulf, supra*, at 582-83). Apart from matters that the parties
> specifically exclude, all of the questions on which the
> parties disagree must therefore come within the scope of
> the grievance and arbitration provisions of the collective
> bargaining agreement." *Warrior & Gulf, supra*, at 581.
> Furthermore, where an arbitration clause is broadly worded
> and does not contain any exceptions, a court must not read
> any exceptions into the clause. *American Manufacturing*
> *Co., supra*, at 567.

> The Second Circuit has routinely applied these principles to
> cases in which parties have sought judicial resolution of
> matters that arguably should be resolved by arbitration.

*Teamste, United Parcel Service National Negotiating Committee v. United Parcel*

*Service, Inc.*, No. 92 Civ. 5162, 1993 U.S. Dist LEXIS 9999 *7 - *8 (S.D.N.Y. 1993);

*1199 SEIU, United Healthcare Workers East v. Rite Aid Corp.*, No. 07 Civ. 4816, 2008

U.S. Dist. LEXIS 22679 (S.D.N.Y. 2008). As the court in *1199 SEIU, United Healthcare*

*Workers East v. Rite Aid Corp.*, said, "Parties opposing arbitration must demonstrate

"that the arbitration clause is not susceptible of an interpretation that covers the asserted

dispute,"" *quoting*, *ITT World Communications, Inc. v. Communications Workers of*

*America*, 422 F.2d 77, 81 (2d Cir. 1970).

    In the instant case, the CBA provides for the broadest possible grievance and

arbitration clause. Grievances, which are subject to arbitration under the CBA, are

defined as "any difference, dispute, or violation relating to the interpretation or

application of the terms of this Agreement." There are no words to be found in the

grievance and arbitration clause or anywhere else in the CBA explicitly exempting any difference, dispute or violation relating to the interpretation or application of the CBA from the reach of the arbitration clause, and it is respectfully submitted that the Court may not create one as requested by the Employer Association. *See 1199 SEIU, United Healthcare Workers East v. Rite Aide Corp.*, No. 07 Civ. 4816, 2008 U.S. Dist. LEXIS 22679, *11-*12 (S.D.N.Y. 2008) (where language of grievance and arbitration clause substantially similar to the instant case, it is the "paradigm of a broad clause" "warranting the presumption of arbitrability,") (quoting Oldroyd v. Elmira Savings Bank, FSB, 134 F.3d 72, 76 (2d Cir. 1998) (quoting *Collins & Aikman Prods. Co. v. Building Sys. Inc.*, 58 F.3d 16, 19 (2d Cir. 1995). Moreover, it is beyond question that the grievance and arbitration clause covers the subject matter of the dispute in this case. Step 1 of the grievance procedure explicitly mentions there is no time limit for grievances concerning welfare plan contributions, which is precisely what the Union's grievance and arbitration demand is about.

The presumption of arbitrability created by having a broad grievance and arbitration clause in a collective bargaining agreement is strong enough to even require arbitration of matters covered by explicit language in the CBA limiting the authority of the arbitrator, because this language without more does not defeat the presumption. *Carey v. General Electric Co*., 315 F.2d 499 (2d Cir. 1963) (relying on *United Steelworkers v. Warrior and Gulf Nav. Co.*, 363 U.S. 574, 584-86 (1960), which held, "In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from

arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad.").

In the instant case there is a dispute over the meaning of the language in Article XXII of the CBA giving the Union and the Employer Association the "right" during the term of the CBA to "recommend" an increase in contributions beyond what is stated in the CBA's schedule. The Union contends this language is intended to require the parties to agree to increases as required in order to maintain a positive cash reserve in the UTF, and that they will be guided in determining the amount of the contribution by the UTF's Actuarial Report[6]

The Employer Association contends the instant grievance is not substantively arbitrable because Article XXII contains a sentence saying there is a deadlock arbitration provision in the UTF's Trust Agreement for resolving disputes between the UTF's Trustees. This contention should be rejected by the Court as being unsupported by the very language relied upon by the Employer Association. The sentence at issue merely states: "Provision has been made for the selection or appointment of a neutral person or impartial umpire in the event that Trustees appointed by the Association and Trustees appointed by the Union deadlock on the administration of the United Teamster Fund." This sentence does not explicitly create an exemption from the CBA's arbitration provision. It neither says disputes between the parties to the CBA about the contribution rates will be referred to the UTF's Trustees for resolution, nor does it say such disputes

---

[6]    While not relevant to the Court's consideration of the arbitrability issue - because the merits of the dispute are not to be considered by the court in this proceeding – the Union's belief that the parties intended the CBA's language to mean there is an obligation to agree to mid-contract term increases is based, in part, on the Trust Agreement clearly providing that the Board of Trustees does not have the unilateral authority to impose an increase on the Employer. The absence of this authority will be discussed, *infra*.

are not subject to the arbitration language appearing in Article XXVI of the CBA. As the

Court in *Carey v. General Electric Co.*, *supra*, at 506, said, "[a]t its worst, this Article is

ambiguous; but as we have just noted, in order that arbitration be excluded, the

exclusionary clause must be 'clear and unambiguous.'" Also, compare *International

Longshoremen's Ass'n v. NY Shipping Ass'n, Inc.*, 403 F.2d 807 (2d Cir. 1968) (where

the parties to the collective bargaining agreement explicitly made a dispute about

increasing fund contributions subject to arbitration as provided for in the benefit plan's

trust agreement, the court enforced the demand for arbitration).

      3.    <u>The Grievance Is Not Arbitrable Under The Trust Agreement</u>

The UTF's Trust Agreement does not provide for arbitration of grievances filed

under collective bargaining agreements with contributing employers to the UTF. In

*Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364, 373 (1984), the Supreme

Court held that unlike a dispute pursuant to a collective bargaining agreement between a

union and an employer where there is a presumption of arbitrability, there is no similar

presumption "in determining whether arbitration agreements between the union and the

employer apply to disputes between trustees and employers, even if those disputes raise

questions of interpretation under the collective bargaining agreement." Instead there

must be explicit language in a collective bargaining agreement or a trust agreement

granting a fund's trustees the right to arbitrate a dispute with an employer. No such

language exists in the instant CBA or Trust Agreement for such an arbitration and "none

should be inferred" by the Court. *Id.*; *MI Installers and Furniture Service, Inc. v. NYC

District Council of Carpenters Pension Fund*, 476 F. Supp. 2d 387, 394 (S.D.N.Y. 2007)

("the doctrine of *Schneider* returns parties to the language of the agreement to determine

      18

whether or not the employer and the benefit fund consented to arbitration") (citations omitted).

The only arbitration provided for in the Trust Agreement is for resolving deadlocks in the administration of the UTF when its Trustees do not agree. Because the Trustees do not have the unilateral authority under the Trust Agreement to raise employer contribution rates, a deadlock arbitrator would not have the authority to unilaterally raise employer contributions simply because the Trustees disagreed about doing so.

The Trust Agreement provides that the "rate of contributions shall be governed at all times by the collective bargaining agreement." The Trust Agreement also provides that a deadlock arbitrator does not have the power to disregard this provision. As such, a dispute among the Trustees over raising contributions, absent a "recommendation" by the parties to the collective bargaining agreement to effectuate a raise, is not substantively arbitrable under the deadlock procedures of the Trust Agreement. *See In re The Arbitration of Controversies Between Barrett v. Miller*, 276 F.2d 429 (2d Cir. 1960) (court declined to appoint arbitrator where dispute among trustees is over a matter they are without power to decide under the trust agreement because arbitrator cannot exercise any more power than the board of trustees); *compare*, *Mahoney v. Fisher*, 277 F.2d 5 (2d Cir. 1960).

In this regard, it should be noted that counsel for the Employer Association has taken pains to not assert that raising contributions is within the unilateral power of the UTF's Trustees pursuant to the deadlock provisions of the Trust Agreement or otherwise. In his letter to Union counsel, Willis J. Goldsmith, Esq. explains that should the UTF Trustees deadlock over the issue of increasing the Employer Association's contribution

19

rate, "that issue must be referred to a "neutral person or impartial umpire" <u>to attempt to facilitate a negotiated resolution</u>." Letter from Goldsmith to Cary, dated April 14, 2008 (emphasis added), annexed to the Complaint as Exhibit "H". In other words, in the Employer Association's view, the deadlock arbitration of this dispute would be merely advisory in nature to the Employer Association and unless agreement was voluntarily reached with the Employer Association over the matter "the contribution rates spelled out in the CBA remain in place until the CBA expires." <u>Id</u>. This describes mediation, not arbitration.

### 4.    The Request for Information and Procedural Arbitrability Defenses

Procedural arbitrability i.e., whether the Union complied with the grievance steps or any time limits in the CBA in order to perfect the right to arbitrate the dispute, in contrast to substantive arbitrability, is a matter for the arbitrator and not the Court to decide. *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557-59 (1964). While procedural arbitrability is not explicitly asserted in the Complaint as an impediment to arbitration, the Complaint does attempt to suggest the Court should be concerned about the Union's alleged failure and/or refusal to accede to the Employer Association's demand that the Union provide it with a vast amount of documents and information only the UTF has. *See* Complaint ¶¶ 46, 48, 49, 50, 51, 52, 53, 54, 55, 71, 72 and 73.

Apart from the information request being ridiculous on its face, e.g., wanting the names and addresses of many thousands of people who have been covered for benefits by the UTF during the past five years, Complaint ¶ 49, this information would have no utility whatsoever to the Employer Association for, as it asserts, being better able to "understand and assess the nature and scope" of the Union's grievance. Complaint ¶ 48.

But more importantly, the request is directed to the wrong entity. The UTF would have this information, not the Union. Before the complaint was filed, Union counsel explained this to counsel for the Employer Association and forwarded its request to the UTF's co-counsel for handling. Letter from Cary to Goldsmith, dated April 1, 2008, annexed to complaint as Exhibit "G".

The Union's obligation to provide information to the Employer Association about the UTF is regulated by the National Labor Relations Board and not the Court because a refusal to provide information is arguably a potential violation of § 8 (a) (5) of the National Labor Relations Act (hereafter "NLRA"), 29 U.S.C. § 158 (a) (5), and therefore within the exclusive jurisdiction of the Board. *See, Layman's Inc.*, 268 NLRB 780 (1984); *Johns Hopkins Hospital*, 273 NLRB 319 (1984); and *see; United Food & Commercial Workers Local 204 v. Harris-Teeter Super-Markets, Inc.*, 716 F. Supp. 1551, 1557 (W.D.N.C. 1989) ("As a general rule, federal courts do not have jurisdiction over activity [that] is 'arguably subject to § 7 or § 8 of the [NLRA],' and they 'must defer to the exclusive competence of the National Labor Relations Board.'" *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83, (1982) (*quoting San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959)").

But more importantly, for the purposes of this proceeding, the issue is one that can best be characterized as a matter raising a question over the procedural arbitrability of the grievance, which, as mentioned, is something for the arbitrator to decide. The same can be said regarding the controversy concerning whether the CBA's Third Step requirement for a Labor-Management Grievance Committee meeting has been satisfied

or not when the Employer Association refused to participate, ostensibly because it did not have the information requested from the Union.  Complaint ¶ 46.

## CONCLUSION

The Complaint's viability rests on the assertion that the grievance is not substantively arbitrable under the CBA, when, in fact, it is.  For the reasons discussed herein, the Union respectfully asks the Court to dismiss plaintiff's Complaint in its entirety and grant the Union such other relief as the Court deems just and proper.

Dated: May 27, 2008
   New York, NY

       Respectfully submitted,

       CARY KANE LLP


By: _____
    Larry Cary (LC 3352)
    Charles Pergue (CP 5619)
    Attorneys for Defendant Union
    1350 Broadway, Suite 815
    New York, NY 10018
    Tel.: (212) 868-6300
    Fax: (212) 868-6302

11945-1