UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------- x
NEW YORK PRODUCE TRADE            )
ASSOCIATION, INC.                 )     Civil Action No. 08-CV-4230 (AKH)
                                  )
            Plaintiff,            )     ECF CASE
                                  )
        -against-                 )
                                  )
LOCAL UNION NO. 202, AN AFFILIATE OF )
THE INTERNATIONAL BROTHERHOOD     )
OF TEAMSTERS,                     )
                                  )
            Defendant.            )
--------------------------------------------------------- x

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Willis J. Goldsmith
Vicki R. Walcott-Edim
JONES DAY
222 East 41st Street
New York, New York 10017
212.326.3939 (telephone)

*Attorneys for Plaintiff New York
Produce Trade Association, Inc.*

## TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT .................................................................................... 1

II. STANDARD OF REVIEW ........................................................................................... 2

III. ARGUMENT .................................................................................................................. 3

    A. Article XXII's Clear And Specific Language Supersedes Article XXVI And Excludes Disputes About Supplemental Welfare Contributions From Arbitration ............................................................................................................ 3

    B. Local 202 Cannot Renegotiate The Terms Of The CBA To Obtain The Relief It Seeks Nor Can An Arbitrator Award Such Remedies .......................... 12

IV. CONCLUSION ............................................................................................................ 14

## TABLE OF AUTHORITIES

Page

*1199 SEIU, United Healthcare Workers East v. Rite Aid Corp.*,
   No. 07 Civ. 4816, 2008 U.S. Dist. LEXIS 22679 (S.D.N.Y. Mar. 24, 2008) ..................... 10

*AT&T Technologies, Inc. v. Communications Workers of America*,
   475 U.S. 643 (1986) ..................................................................................................... 3, 4, 5

*Adirondack Transit Line, Inc. v. United Transportation Union, Local 1582*,
   305 F.3d 82 (2d Cir. 2002) ............................................................................................. 4, 11

*Aramony v. United Way of America*,
   254 F.3d 403 (2d Cir. 2001) ............................................................................................ 5, 10

*Barrett v. Miller*,
   276 F.2d 429 (2d Cir. 1960) ................................................................................................ 13

*Bell Atlantic Corp. v. Twombly, et al.*,
   --- U.S. ---, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007) ......................................................... 2

*Bueno v. Gill*,
   No. 02 Civ. 1000 DLC, 2002 WL 31106342 (S.D.N.Y. Sept. 20, 2002) ........................... 12

*Carey v. General Electric Co.*,
   315 F.2d 499 (2d Cir. 1963) ................................................................................................ 11

*Communications Workers of America, AFL-CIO v. New York Telephone Co.*,
   327 F.2d 94, 97 (2d Cir. 1964) .................................................................................. 7, 10, 12

*County of Suffolk v. Alcorn*,
   266 F.3d 131 (2d Cir. 2001) .................................................................................................. 5

*Druyan v. Jagger*,
   508 F. Supp. 2d 228 (S.D.N.Y. 2007) ................................................................................... 2

*Gangemi v. General Electric Co.*,
   532 F.2d 861 (2d Cir. 1976) .............................................................................................. 4, 7

*Graphic Committees International Union v. North America Directory Corp. II*,
   98 F. 3d 97 (3d Cir. 1996) ................................................................................................ 5, 13

*Houlihan Lokey Howard & Zukin Capital, Inc. v. Protective Group, Inc.*,
   596 F. Supp. 2d 1230 (S.D.N.Y. 2007) ................................................................................. 5

...

## TABLE OF AUTHORITIES
(continued)

Page

*ITT World Communications, Inc. v. Communications Workers of America, AFL-CIO,*
    422 F.2d 77 (2d Cir. 1970)..................................................................................................11

*International Longshoremen's Association, AFL-CIO v. New York Shipping Assoc., Inc.,*
    403 F.2d 807 (2d Cir. 1968)................................................................................................11

*John Wiley & Sons, Inc. v. Livingston,*
    376 U.S. 543 (1964)............................................................................................................11

*Kim v. Fujikawa,*
    827 F.2d 1401 (9th Cir. 1987) .....................................................................................7, 8, 9

*Layman's Inc.,*
    268 N.L.R.B. 780 (1984) ...................................................................................................11

*Local Union 1393 IBEW v. Utilities District,*
    167 F.3d 1181 (7th Cir.), *cert. denied*, 528 U.S. 819 (1999)...............................................6

*Loughman v. Unum Provident Corp.,*
    536 F. Supp. 2d 371 (S.D.N.Y. 2008).................................................................................5

*MI Installers & Furniture Service, Inc. v. New York City District Council of Carpenters Pension Fund,*
    476 F. Supp. 2d 387 (S.D.N.Y. 2007)...............................................................................13

*Mahoney v. Fisher,*
    277 F.2d 5 (2d Cir. 1960)..................................................................................................13

*Marine Pollution Serv., Inc. v. Local 282, International Brotherhood of Teamsters,*
    857 F.2d 91 (2d Cir. 1988)................................................................................................13

*Maryland Casualty Co. v. Realty Advisory Board on Labor Relations,*
    107 F.3d 979 (2d Cir. 1997)............................................................................................3, 7

*Menorah Home & Hospital for the Aged and Infirm, Inc.,*
    573 F. Supp. 908 (E.D.N.Y. 1983) ...............................................................................7, 10

*New Hampshire Insurance Co. v. Canali Reinsurance Co.,*
    No. 03 Civ. 8889, 2004 WL 769775 (S.D.N.Y. Apr. 12, 2004)..........................4, 7, 8, 10

*New York News v. Newspaper Guild of New York,*
    927 F.2d 82 (2d Cir. 1991)..................................................................................................4

## TABLE OF AUTHORITIES
(continued)

Page

*Northern California Mailers Union v. San Francisco Chronicle,*
    No. C 06-00474 CRB, 2006 WL 1627016 (N.D. Cal. June 13, 2006) ................................ 7

*Schneider Moving & Storage Co. v. Robbins,*
    466 U.S. 364 (1984) ............................................................................................................ 13

*Teamsters United Parcel Service National Negotiating Committee v.*
    *United Parcel Service, Inc.,*
    No. 92 Civ. 5162 (CSH), 1993 U.S. Dist. LEXIS 9999 (S.D.N.Y. July 20, 1993) ..... 10, 11

*United Artists Eastern Theatres, Inc. v. Local 640, International Alliance of Theatrical*
    *Stage Employees & Moving Picture Machine Operators of the United States and*
    *Canada, AFL-CIO,*
    465 F. Supp. 709 (E.D.N.Y. 1979) .................................................................................. 3, 6

*United Food & Commercial Workers Local 204 v. Harris-Teeter Super-Markets, Inc.,*
    716 F. Supp. 1551 (W.D.N.C. 1989) ................................................................................. 11

*United Steelworkers of America v. Commonwealth Aluminum Corp.,*
    162 F.3d 447 (6th Cir. 1998) ............................................................................................ 8, 9

*United Steelworkers of America v. Warrior & Gulf Navigation Co.,*
    363 U.S. 574 (1960) .......................................................................................................... 3, 5

*Woodcrest Nursing Home v. Local 144, Hotel, Hospital, Nursing Home and Allied*
    *Services Union, S.E.I.U., AFL-CIO,*
    788 F.2d 894 (2d Cir. 1986) .................................................................................................. 4

Plaintiff New York Produce Trade Association, Inc. ("Association") respectfully submits this memorandum of law in opposition to the motion to dismiss filed by Defendant Local Union No. 202, an affiliate of the International Brotherhood of Teamsters ("Local 202" or "Union"). Local 202 moves to dismiss the Association's complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.    PRELIMINARY STATEMENT

The Association seeks declaratory judgments that Local 202 is not the proper party to demand and pursue arbitration of any demands for increased welfare contributions because, to the extent that arbitration is permissible, the Association's and the Union's Trustees must initiate such proceedings following a deadlock. The unambiguous terms of Article XXII.A of the collective bargaining agreement ("CBA") compel this result. The Association also requests permanent injunctive relief to prevent the Union from pursuing arbitration.

The Second Circuit will not force parties to arbitrate absent an agreement to do so. Accordingly, courts routinely uphold the limitations that contracting parties have placed on their willingness to arbitrate certain matters. To demonstrate that the "grievance" falls within the scope of the CBA's arbitration clause, arbitration proponents must do more than assert that the parties differ on the meaning of a contractual provision. The presumption favoring arbitration will be rebutted when the parties have excluded a dispute from arbitration.

In this case, the parties explicitly reserved the right to negotiate about supplemental welfare contributions; the CBA permits, but does not require the Association to increase its level of contributions to the Fund. By its plain terms, the CBA gives the Association and the Union the same right to recommend contribution increases and/*or* benefit reductions by directing their respective *Trustees* to do so if the Fund's surplus drops under $750,000 (emphasis added). Since the CBA does not obligate either party to follow any particular course, much less require the

Association to increase its contributions, an arbitrator could not determine otherwise. To the contrary, the parties established a detailed process separate and apart from Article XXVI's grievance and arbitration procedure that allows a neutral person or impartial umpire to break deadlocks among the *Trustees* concerning the Fund's administration (emphasis added).

Unhappy as it may be with the bargain it struck about any entitlement to additional welfare contributions, the Union cannot now renegotiate the terms of the CBA. Nor can it use the grievance and arbitration process to raise a "dispute" to make an end run around the bargaining process or to impose obligations upon the Association that the CBA does not require. Rather, the Association and the Union can negotiate about the Union's demand for additional benefit contributions. If they fail to agree, they can instruct their respective Trustees to seek an increase or decrease in Fund contributions and/or benefits pursuant to Article XXII.A's clear and unambiguous terms; only then may the Trustees present the matter to an arbitrator.

## II.   STANDARD OF REVIEW

The standard of review on a Rule 12(b)(6) motion to dismiss "is heavily weighted in favor of the plaintiff." *Druyan v. Jagger*, 508 F. Supp. 2d 228, 235 (S.D.N.Y. 2007). A motion to dismiss may be granted only if the plaintiff has not pled "enough facts to state a claim to relief that is *plausible on its face*." *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (emphasis added). Because the Association undoubtedly states a plausible claim that the Association and the Union agreed to negotiate about increased welfare benefits and precluded the Union from pursuing such disputes through arbitration, the Union's motion to dismiss must be denied.

### III. ARGUMENT

#### A. Article XXII's Clear And Specific Language Supersedes Article XXVI And Excludes Disputes About Supplemental Welfare Contributions From Arbitration.

Federal courts have "the power under Section 301 . . . to prevent submission of an issue to arbitration." *E.g., United Artists Eastern Theatres, Inc. v. Local 640, Int'l Alliance of Theatrical Stage Employees & Moving Picture Machine Operators of the United States and Canada, AFL-CIO*, 465 F. Supp. 709, 711-12 (E.D.N.Y. 1979). And it is well settled that a party cannot be forced to arbitrate a dispute unless it has agreed to submit it to arbitration. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 650 (1986) (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

The Union would have this Court believe that Local 202 can simply allege that there is a disagreement or dispute regarding any word, phrase, sentence or provision in the CBA and the Association would automatically be required to submit to arbitration. *See* Def.'s Mot. To Dismiss at 10, 17. Specifically, the Union asserts, for the first time, that its grievance concerns an "amendment, supplement or modification to the CBA" and "a dispute over the meaning of the language in Article XXII of the CBA giving the Union and the Employer the 'right' during the term of the CBA to 'recommend' an increase in contributions beyond what is stated in the CBA's schedule." *Id.* The Union further contends that "this language is intended to require the parties to agree to increases as required in order to maintain a positive cash reserve in the UTF . . . ." *Id.* But the inquiry does not end here, and the law of substantive arbitrability is not as accommodating to Local 202's position as the Union contends.

Courts regularly uphold and enforce contractual provisions that exclude matters from arbitration. *See, e.g., Maryland Casualty Co. v. Realty Advisory Board on Labor Relations*, 107

F.3d 979, 983 (2d Cir. 1997) (express provisions in a collective bargaining agreement will exclude a grievance from arbitration despite broad arbitration clause); *Gangemi v. General Elec. Co.*, 532 F.2d 861, 866 (2d Cir. 1976) (holding that a dispute regarding "bumping" was governed by a separate provision, which demonstrated the parties' desire for this issue to be outside the scope of arbitration); *New Hampshire Insurance Co. v. Canali Reinsurance Co.*, 2004 WL 769775, at *2 (S.D.N.Y. Apr. 12, 2004) (reinsurance agreement's separate "Service of Suit" provision that required parties to submit payment disputes to federal court confirmed that parties intended for certain disputes to fall outside scope of arbitration clause). Courts in the Second Circuit will not mandate arbitration if it can be said with "positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Adirondack Transit Line, Inc. v. United Transportation Union, Local 1582*, 305 F.3d 82, 86, 87-88 (2d Cir. 2002) (citing *AT&T Technologies, Inc. v CWA*, 475 U.S. at 648 and reversing order obligating employer to arbitrate attorneys' fees claim when arbitration clause excluded employer-initiated grievances); *New York News v. Newspaper Guild of New York*, 927 F.2d 82, 84 (2d Cir. 1991) (holding that arbitration clause covering disputes arising from grievances about the interpretation of the contract did not cover contract termination dispute). And "[i]n determining whether a given dispute must be arbitrated the court looks to all terms of the parties' agreement bearing on arbitration. Even though the words of the agreement's arbitration clause may be broad, its scope may be limited by language elsewhere in the agreement clearly and unambiguously negating or limiting it with respect to a matter in dispute." *See, e.g., Woodcrest Nursing Home v. Local 144, Hotel, Hosp., Nursing Home and Allied Services Union, S.E.I.U., AFL-CIO*, 788 F.2d 894, 898 (2d Cir. 1986) (holding that the CBA unambiguously excluded arbitration of disputes with regard to the rights of certain employees at issue in the litigation).

Moreover, "it is a fundamental rule of contract construction that "specific terms and exact terms are given greater weight than general language. . . . Even where there is no 'true conflict' between two provisions, specific words will limit the meaning of general words if it appears from the whole agreement that the parties' purpose was directed solely toward the matter to which the specific words or clause relate." *Aramony v. United Way of America*, 254 F.3d 403, 413-14 (2d Cir. 2001) (internal citations omitted) (non-qualified pension plan). *See also, e.g., County of Suffolk v. Alcorn*, 266 F.3d 131, 139 (2d Cir. 2001) (stipulation of a partial settlement of a RICO class action and false claims suit); *Loughman v. Unum Provident Corp.*, 536 F. Supp. 2d 371, 376-77 (S.D.N.Y. 2008) (long-term disability policies); *Houlihan Lokey Howard & Zukin Capital, Inc. v. Protective Group, Inc.*, 596 F.Supp. 2d 1230, 1240 (S.D.N.Y. 2007) (financial advisory and investment banking services agreement).

The Association and the Union have negotiated clear limitations with respect to supplemental welfare contributions in Article XXII. The Union's rote incantation of the presumption of arbitrability cannot trump the CBA's clear language. A presumption is an "attitude dictated by probability," and "[t]here is no reason to presume anything where the intent is expressly stated." *Graphic Comms. International Union v. North America Directory Corp. II*, 98 F. 3d 97, 103 (3d Cir. 1996); *see also Warrior & Gulf*, 363 U.S. at 584-85; *AT&T Techs.*, 475 U.S. at 650.

> 1. Article XXII Permits The Association And The Union To Exercise Their Discretion About Increases To Welfare Contributions And/Or Eliminations Or Reductions Of Benefits.

Article XXII grants the Association and the Union the "*right*, during the term of this Agreement, to instruct their respective Trustees to increase the contribution and or reduce the welfare benefits in the event that the surplus in the Fund declines below $ 750,000 . . . ." Art. XXII.A, Ex. A, Compl. (emphasis added). Yet the Union takes the position that this language

somehow both requires the Association to increase contribution rates in excess of those spelled out in the CBA and adopt an actuary's recommendation without question and, further, permits an arbitrator to so rule. Def.'s Mot. to Dismiss, at 6. But courts have refused to order arbitration when contracting parties have reserved rights or the ability to negotiate about certain matters. For example, in *United Artists Eastern Theatres, Inc. v. Local 640, Int'l Alliance of Theatrical Stage Employees & Moving Picture Machine Operators of the United States and Canada, AFL-CIO*, 465 F. Supp. 709, 711-12 (E.D.N.Y. 1979), the Court stayed arbitration when the parties entered into a separate stipulation that preserved the right to negotiate about certain employment terms and conditions. The Court did so despite the stipulation's express incorporation of existing collective bargaining agreements and their arbitration clauses. *Id.* at 711-12. The Union's push for arbitration, in *United Artists Eastern Theatres, Inc.*, "placed the cart before the horse" when the stipulation permitted the parties to continue negotiating or bargaining about staffing for automated projection booths. *Id.* at 711 (refusing to broaden the arbitration clause or incorporate it into separate agreements). And in *Local Union 1393 IBEW v. Utilities Dist.*, 167 F.3d 1181, 1184-85 (7th Cir.), *cert. denied*, 528 U.S. 819 (1999), the Seventh Circuit held that a grievance concerning an employee's termination was not arbitrable, even pursuant to a contract with a "very broad" arbitration clause, because the contract expressly left to management the unqualified right to discharge employees. *Id.* at 1182-84.

Simply put, even a broad arbitration clause cannot mandate arbitration when the contract provision at issue leaves nothing to be arbitrated. Here, Local 202 purports to challenge the meaning of a clause in Article XXII.A of the CBA although it clearly grants the Association and Union only the right to instruct their respective Trustees to increase contributions and/or reduce benefits. Art. XXII.A, CBA, Ex. A, Compl. There is nothing ambiguous about this provision or

its meaning; the obligations it imposes cannot be challenged through arbitration. As the Second Circuit has instructed: if the presumption favoring arbitrability is not to be made irrebutable, a court "cannot close its eyes to the plain meaning of the words used." *Communication Workers of America, AFL-CIO v. New York Telephone Co.*, 327 F.2d 94, 97 (2d Cir. 1964).

        2.        Regardless Of Whether The CBA Requires The Association To Pay Supplemental Contributions, The Parties Prohibited The Union From Pursuing Any Such Requests Through Arbitration.

As the above cases make clear, it is inappropriate to force parties to arbitrate a matter they have excluded from arbitration. *See, e.g., Maryland Casualty Co. v. Realty Advisory Board on Labor Relations*, 107 F.3d at 983 (express provisions in a collective bargaining agreement will exclude a grievance from arbitration despite broad arbitration clause); *Gangemi v. General Elec. Co.*, 532 F.2d at 866 (If parties agree to submit certain disputes to arbitration only upon mutual consent, "courts are powerless, absent such consent, to compel arbitration."); *New Hampshire Insurance Co.*, 2004 WL 769775, at *2 (reinsurance agreement's separate "Service of Suit" provision confirmed parties' intent for disputes to fall outside scope of arbitration clause). Likewise, here, contract language that removes certain matters from the jurisdiction of the labor-management committee compels their exclusion from arbitration. *See Kim v. Fujikawa*, 827 F.2d 1401, 1404 (9th Cir. 1987) (requiring union trustees to follow agreed-to procedures and submit dispute to an impartial umpire rather than directly to labor-management committee); *see also Menorah Home & Hospital for the Aged and Infirm, Inc.*, 573 F. Supp. 908, 912-13 (E.D.N.Y. 1983) (stipulation that, in effect, renewed collective bargaining agreement narrowed arbitration clause by "remov[ing] the negotiation of local issue[s] from the arbitral forum"); *Northern California Mailers Union v. San Francisco Chronicle*, No. C 06-00474 CRB, 2006 WL 1627016, at *5 (N.D. Cal. June 13, 2006) (provision giving labor-management committee no

"jurisdiction over the settlement of a new wage scale and a new contract between the parties" precluded committee from arbitrating dispute).

Further, in *United Steelworkers of America v. Commonwealth Aluminum Corp.*, 162 F.3d 447 (6th Cir. 1998), the Court held that the union could not compel the employer to arbitrate disputes related to the denial of an ERISA plan's group insurance benefits. The union, in *Commonwealth Aluminum Corp.*, brought a general grievance alleging a unilateral change in benefits. The Court determined that the benefits plan, including its review procedure, had been incorporated into the CBA. *Id.* at 451. Although the CBA contained a broad grievance provision encompassing "matters involving the interpretation and application of all provisions of this Agreement," the Court concluded that "the incorporation of the claims review procedure, which expressly provides that the decisions of the Plan Administrator will be final and binding on all interested parties, expresses an intention to exclude from arbitration all benefits disputes which are within the Administrator's authority to interpret the Plan." *Id.* Because the grievances in question alleged denial of plan benefits, they fell within the Administrator's broad authority to interpret the plan, determine eligibility and resolve disputes over participants' rights, rather than the CBA's grievance and arbitration provisions.

Here, the Association and the Union agreed to submit issues concerning supplemental contributions and/or reduced benefits to the Association's and Local 202's Trustees instead of to the Labor-Management Committee. *See Kim v. Fujikawa*, 827 F.2d at 1404 (holding, in the "context of a comprehensive scheme of federal regulation," that fund trustees must first consider data and options presented by the actuaries before arbitrators or courts could enforce contractual obligations); *New Hampshire Insurance Co.*, 2004 WL 769775, at *2 (parties intended for some disputes to fall outside arbitration). More specifically, the parties only agreed to be "guided" by

the Fund's accountants and actuaries. Art. XXII.A, Ex. A, Compl. And the Association and Union further agreed that if the Trustees deadlocked about the administration of the Fund, after having received instructions from the Association and the Union in accordance with Article XXII.A, "[p]rovision has been made for the selection or appointment of a neutral person or impartial umpire in the event of a deadlock." Art. XXII.A, Ex. A, Compl.; *see also* Art. VII, §7.1, Trust Agreement, Ex. B, Compl.

In short, Article XXII forecloses the Labor-Management Committee from adjusting, and the Union from arbitrating, demands for across-the-board increases in welfare contributions that the CBA does not mandate the Association to pay. Accordingly, the Union should not be permitted to bypass Article XXII's requirements and procedures "in favor of the arbitration procedures in the collective bargaining agreement." *See Kim*, 827 F.2d at 1404 (CBA's arbitration provisions would come into play only if the majority of the fund trustees or the umpire referred the matter to the labor-management committee); *see also Commonwealth Aluminum Corp.*, 162 F.3d at 451 (plan administrator had right to interpret plan and resolve disputes rather than an arbitrator). "To hold otherwise would hamper effective management of the . . . Trust Fund and undercut the requirements of the LMRA." *Id.* at 1404 ("The trustees must have the opportunity to develop a comprehensive strategy for attacking the deficit that will include enforcing the obligations of all employers"). At best, Article XXVI's reference to "welfare plan contributions" applies to disputes that the Union, Labor-Management Committee or an arbitrator is empowered to resolve involving individual employee claims concerning an alleged failure to make required contributions for that employee (*e.g.,* Art. XXII.C, Ex. A, Compl.)[1] rather than requests for *en masse* discretionary contributions that the Association can

---

[1] Article XXII.C states that "[w]illful failure or refusal on the part of an Employer to contribute to the United Teamster Fund for each employee covered by this Agreement shall leave the defaulting employer with full

-9-

choose or refuse to pay. *See, e.g., Aramony*, 254 F.3d at 413-14 (general contract terms yield to specific terms).

"[W]hile a provision excluding a particular dispute from arbitration must be 'clear and unambiguous' it is not required 'that a court adopt an unreasonable construction of a contract provision in order to find that a dispute is arbitrable.'" *Menorah Home and Hospital for the Aged and Infirm, Inc.*, 573 F. Supp. at 912 (quoting *Gangemi v. General Elec. Co.*, 532 F.2d at 866). The Union's tortured construction of Articles XXII and XXVI ignores their plain meanings and would render Article XXII meaningless.[2] *See New York Telephone Co.*, 327 F.2d at 97 (recognizing obligation to honor contract's plain language); *New Hampshire Ins. Co.*, 2004 WL 769775, at *2 (reading clause at issue "properly and as a whole" and rejecting interpretations that rendered its language as "mere surplusage" and defied their "plain meaning").

The cases cited by the Union do not warrant a different result or alter the fact that the Association and Union removed questions about increased welfare contributions from the jurisdiction of the Labor-Management Committee and arbitration. *See, e.g., 1199 SEIU, United Healthcare Workers East v. Rite Aid Corp.*, No. 07 CV 4816, *available at* 2008 U.S. Dist. LEXIS 22679, at *11 (S.D.N.Y. Mar. 24, 2008) (granting plaintiff's motion to compel arbitration when CBA contained a broad arbitration clause and no exclusionary clause was at issue); *Teamsters United Parcel Service Nat'l Negotiating Committee v. United Parcel Service, Inc.*, No. 92 Civ. 5162 (CSH), *available at* 1993 U.S. Dist. LEXIS 9999, at *7-*8 (S.D.N.Y. July 20,

---

(continued...)

responsibility to assume the benefits *due the employee and his family*. . . . Employers shall contribute to the United Teamster Fund for any employee who is suspended or discharged and whose suspension or discharge is submitted to *arbitration* and the terms of this Agreement during the period prior to the issuance of the *arbitrator's decision*. . . ." Art. XII.C, Ex. A, Compl. (emphasis added).

[2] As another example of the Union's strained interpretation of the CBA's terms, Local 202's dispute and its Motion To Dismiss focus on the Association's right to increase contributions while ignoring its prerogative to reduce benefits. *See generally* Def.'s Mot. To Dismiss; *see also* Ex. D, Compl.

1993) (ordering parties to arbitrate question of national grievance committee's jurisdiction to review state grievance committee's decision because it was "clear that the parties . . . agreed to submit a deadlock to arbitration," the parties had deadlocked, the defendant exercised its right to arbitrate, and the parties arbitrated these jurisdictional questions in the past)[3]; *ITT World Communications, Inc. v. Communications Workers of America, AFL-CIO*, 422 F.2d 77, 81-82 (2d Cir. 1970) (plaintiff's arguments "at most raise[d] a doubt" whether the arbitration clause covered the dispute about violation of a no-strike clause); *International Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 403 F.2d 807, 808, 809 (2d Cir. 1968) (collective bargaining agreement required employer to increase welfare contributions and "single paragraph" in memorandum of agreement mandated review of fund income, permitted the union to raise question of need for additional employer contributions, and stated that if the parties were "unable to agree, the matter shall be referred to arbitration"); *Carey v. General Electric Co.*, 315 F.2d 499, 506-07 (2d Cir. 1963) ("garden variety," "run of the mill" discharge/discipline grievance was not excluded from broad arbitration clause that limited the arbitrator's authority and provided that "all grievances involving a violation of the collective bargaining agreement are

---

[3] Local 202's reliance on *Teamsters United Parcel Service Nat'l Negotiating Committee*, 1993 U.S. Dist. LEXIS 9999, at *7-*8, undermines the Union's claims. First, the parties in that case deadlocked, but the Union here admits that the Trustees have not deadlocked over demands for increased contributions. Def.'s Mot. To Dismiss at 7. Second, whether Local 202's and the Association's Trustees have grappled with and made decisions about the Fund's financial situation and not previously arbitrated such disputes in the past is simply irrelevant absent a waiver of the Association's rights. *See* Def.'s Mot. To Dismiss at 3-4.

Further, the Union tries to avoid explaining the delays it caused by refusing to comply with the Association's information requests. Specifically, Local 202 lodges a transparent and misplaced procedural arbitrability "defense" and injects other irrelevant arguments related to the National Labor Relations Board's jurisdiction. *See* Def.'s Mot. To Dismiss at 20-22; *see also John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557-59 (1964); *United Food & Commercial Workers Local 204 v. Harris-Teeter Super-Markets, Inc.*, 716 F. Supp. 1551, 1557 (W.D.N.C. 1989); *Layman's Inc.*, 268 N.L.R.B. 780 (1984). However, the fact remains, and the Union agrees, that the Trustees have not deadlocked about increased contributions. Def.'s Mot. To Dismiss at 7. In any event, an "unfulfilled condition precedent" such as a deadlock will not compel arbitration when the parties have excluded a matter from arbitration. *See Adirondack Transit Line*, 305 F.3d at 87-88.

to be arbitrable" when employer did not rely on the existence of a separate exclusionary provision).

### B. Local 202 Cannot Renegotiate The Terms Of The CBA To Obtain The Relief It Seeks Nor Can An Arbitrator Award Such Remedies.

It is beyond dispute that the Association is only obligated to pay the contribution rates spelled out in the CBA. Compl. ¶¶ 17, 21. Exceptions could arise only if the Association and the Union (1) negotiated and reached agreement or (2) instructed their respective Trustees to increase welfare contributions and/or decrease benefits, the Trustees consequently deadlocked, and the Trustees submitted the deadlock to a neutral person, impartial umpire or arbitrator pursuant to Article XXII.A. Local 202, recognizing the fatal defects in its claim that the Association supposedly "violated" Article XXII of the CBA by not complying with the Union's demand for additional contributions to reduce a fund shortfall of approximately $15 million, tries to recast its grievance as an attempt to amend or modify the terms of the CBA. *Compare* Exs. D and J, Compl. *with* Def.'s Mot. to Dismiss, at 10, 17.

The Court should reject Local 202's attempt to change the nature of its grievance or the CBA's terms. The Union already had its chance to negotiate such limitations at the bargaining table. By the plain, unambiguous language of the contract, the Union waived any right to contest the Association's right to instruct its Trustees concerning welfare contributions and/or benefits. The Union is attempting to circumvent the bargaining process and Article XXII's procedures by using the grievance and arbitration process to strong arm the Association into a mid-term modification of the CBA. The Union cannot do so. *See New York Telephone Co.*, 327 F.2d at 97 (holding that provision in contract clause precluded arbitration about meaning of clause and stating that it was unimpressed by union's argument that interpreting the provision to exclude arbitration would give the company unlimited discretion). In addition, proposals or demands that

would change a CBA's basic provisions are "unquestionably beyond" the scope of an arbitrator's authority and "extraordinary" acts that would require amendments to the CBA are not arbitrable. *Cf. Bueno v. Gill*, No. 02 Civ. 1000 DLC, 2002 WL 31106342, at *3 & n.6 (S.D.N.Y. Sept. 20, 2002) (collecting cases and noting that "extraordinary" acts by trustees cannot be resolved by an arbitrator on deadlock).[4]

Finally, it is indisputable that the Labor-Management Committee and an arbitrator lack power to unilaterally increase the Association's contribution levels. Any arbitration award that exceeds the arbitrator's authority would fail to draw "from the essence of the collective bargaining agreement" and thus be invalid. *See Marine Pollution Serv., Inc. v. Local 282, International Brotherhood of Teamsters*, 857 F.2d 91, 94 (2d Cir. 1988) (vacating arbitration award because it was "clear that the arbitrator '*must* have based his award on some body of thought, or feeling, or policy, or law that is *outside the contract* (and not incorporated in it by reference.'")). Since an arbitrator would be unable to award the Union the relief it seeks, arbitration would be futile. *See, e.g., Graphic Communications Int'l*, 98 F.3d at 102-03 (arbitration would be hollow when union peer review panel could not change terms of CBA or health benefits).

---

[4] In an attempt to detract attention from its weak arguments, Local 202 asserts that "[t]he UTF's Trust Agreement does not provide for arbitration of grievances filed under collective bargaining agreements with contributing employers to the UTF." Def.'s Motion To Dismiss at 18. The Union misses the point. The issue is not whether the Trustees can arbitrate with the Association. First, the Association's and Union's Trustees have not demanded to arbitrate with the Association. More importantly, by its plain terms, the CBA permits an arbitrator to rule upon requests for contribution increases *if* the Association and Employer have instructed their Trustees on the subject, the Trustees have met and deadlocked, and the Trustees have submitted the deadlock to an impartial umpire or neutral person. Art. XXII.A, Ex. A, Compl. Therefore, the cases cited by the Union are inapposite. *See, e.g., Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364 (1984); *Mahoney v. Fisher*, 277 F.2d 5 (2d Cir. 1960); *Barrett v. Miller*, 276 F.2d 429 (2d Cir. 1960); *MI Installers & Furniture Service, Inc. v. New York City District Council of Carpenters Pension Fund*, 476 F. Supp. 2d 387 (S.D.N.Y. 2007).

## IV.  CONCLUSION

The Association respectfully asks that Court grant the Association's request for declaratory judgments, stay the arbitration commenced by Local 202 against the Association, and award injunctive relief and such other relief as this Court deems proper.

Respectfully submitted,

Dated: New York, New York  
      June 12, 2008

JONES DAY

By: /s/ Vicki R. Walcott-Edim  
    Willis J. Goldsmith (WG-1598)  
    Vicki R. Walcott-Edim (VW-1223)  
    222 East 41st Street  
    New York, New York 10017  
    Telephone: (212) 326-3939

*Attorneys for Plaintiff*  
*New York Produce Trade Association, Inc.*

NYI-4092428

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2008, the foregoing document was filed with the Clerk of the Court and served via overnight delivery in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic Service upon the following parties:

>Larry Cary, Esq.
>CARY KANE LLP
>1350 Broadway, Suite 815
>New York, NY 10018
>(212) 868-6300
>
>*Attorney for Defendant*
>*Local 202, an affiliate of the*
>*International Brotherhood of the Teamsters*

>/s/ Vicki R. Walcott-Edim
>Vicki R. Walcott-Edim (VW-1223)
>JONES DAY
>222 East 41st Street
>New York, NY 10017-6702
>vwalcottedim@jonesday.com
>(212) 326-3939