UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------

NEW YORK PRODUCE TRADE
ASSOCIATION, INC.

              Plaintiff,

      -against-

LOCAL UNION NO. 202, AN AFFILIATE OF
THE INTERNATIONAL BROTHERHOOD
OF TEAMSTERS,

             Defendant.

--------------------------------------------------------

Index No: 08-cv-4230
(A.K.H.)

## DEFENDANT'S REPLY
## IN SUPPORT OF MOTION TO DISMISS

Respectfully Submitted,

Cary Kane LLP
Counsel for Defendant
Local Union No. 202,
  an affiliate of the
  International Brotherhood
  of Teamsters
1350 Broadway, Suite 815
New York, NY 10018
(212) 868-6300 (Phone)
(212) 868-6302 (Fax)

# TABLE OF CONTENTS

Table of authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    I

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

SUMMARY OF PLAINTIFF'S ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . .    1

      DEFENDANT'S REPLY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

      Plaintiff's First Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

      Plaintiff's Second Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

      Plaintiff's Third Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    10

      Plaintiff's Fourth Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

      Final Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Adirondack Transit Lines, Inc. v. United Transportation Union, Local 1582,*
305 F.3d 82 (2d. Cir. 2002)..............................................................................6

*Aramony v. United Way of America,* 254 F.3d 403 (2d Cir. 2001) ........................7

*Chicago Graphic Arts Health and Welfare Fund v. Person Smurfit Corp.,*
No. 94 C 1957 (JAN), 1995 U.S. Dist. LEXIS 14228 (N.D. Iii. Sept. 27,
1995) ................................................................................................................9

*Country of Suffolk v. Alcorn,* 266 F.3d 131 (2d. Cir. 2001)....................................7

*Gangemi v. Syracuse Draftsmen's Association,* 532 F.2d 861 (2d. Cir.
1975) ................................................................................................................5

*Houlihan Lokey Howard & Zukin Capital, Inc. v. Protective Group, Inc.,*
596 F. Supp. 2d 1230 (S.D.N.Y. 2007)............................................................7

*International Longshoremen's Association v. New York Shipping
Association, Inc.,* 403 F.2d 807 (2d. Cir. 1968)..............................................12

*Kim v. Fujkawa,* 827 F.2d 1401 (9th Cir. 1987)............................................10,11

*Local 100, Transport Workers Union, AFL-CIO v. Rosen,* Index No.06 Civ.
4787 (RPP), 2007 U.S. Dist. LEXIS 51150 (S.D.N.Y. July 13, 2007) ..............5

*Loughman v. Unum Provident Corp.,* 536 F. Supp. 2d 371 (S.D.N.Y.
2008) ................................................................................................................7

*Maryland Casualty Co. v. Realty Advisory Board on Labor Relations,* 107
F.3d 979 (2d Cir. 1997)....................................................................................5

*New Hampshire Insurance Co. v. Canali Reinsurance Co.,* No. 03 Civ.
8889 (LTS), 2004 U.S. Dist. LEXIS 6180 (S.D.N.Y. Apr. 12, 2004)................6

*New York News, Inc v. Newspaper Guild of New York,* 927 F.2d 82 (2d.
Cir. 1991)..........................................................................................................6

*United Artists Eastern Theatres, Inc. v. Local 640, International Alliance of
Theatrical Stage Employees & Moving Picture Machine Operators of
the United States and Canada,* 465 F. Supp. 709 (E.D.N.Y. 1979)................9

*United Steelworkers of America v. Commonwealth Aluminum Corp.*, 162
   F.3d 447 (6th Cir. 1998)...............................................................................12

*United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363
   U.S. 593 (U.S. 1960) ...................................................................................13

*Woodcrest Nursing Home v. Local 144, Hotel, Hospital, Nursing Home
   and Allied Services Union*, 927 F.2d 894 (2d. Cir. 1986).................................7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------
NEW YORK PRODUCE TRADE
ASSOCIATION, INC.

                    Plaintiff,

              -against-

LOCAL UNION NO. 202, AN AFFILIATE OF
THE INTERNATIONAL BROTHERHOOD
OF TEAMSTERS,

                   Defendant.
----------------------------------------------------------

Index No: 08-cv-4230
(A.K.H.)

## DEFENDANT'S REPLY
## IN SUPPORT OF MOTION TO DISMISS

### PRELIMINARY STATEMENT

Defendant Local Union 202, an affiliate of the International Brotherhood of Teamsters (hereafter "Union"), respectfully submits this reply to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12 (b) (6) (hereafter "Plaintiff's Memorandum"), which was timely submitted by counsel for the plaintiff New York Produce Trade Association, Inc. (hereafter "Employer Association").

### SUMMARY OF PLAINTIFF'S ARGUMENT

Plaintiff asserts the Union is not a proper party to arbitrate a dispute over the meaning of certain language in the Collective Bargaining Agreement (hereafter "CBA") between the Union and the Employer Association pursuant to the CBA's arbitration clause. Instead, it asserts arbitration over the issue of the Union and Employer

12183-1

Association's obligation under the CBA to increase contributions to the United Teamster

Fund (hereafter "UTF") is only available in the event the UTF's trustees deadlock over

the issue, and then only pursuant to the deadlock arbitration provision in the UTF's

Agreement. and Declaration of Trust (herein "Trust Agreement").

In support thereof, the Employer Association essentially makes the following four

arguments:

(1)     The language in Article XXII of the CBA about certain aspects of the

UTF's administration – that the parties appoint trustees to the UTF

and that a deadlock provision exists for resolving disputes between

the UTF's Trustees – is specific language that excludes the instant

dispute from the CBA's grievance and arbitration clause found in

Article XXVI. See Argument III A, Plaintiff's Memorandum at 3-5.

(2)     The language at issue in Article XXII of the CBA providing for the

right of the parties to agree to recommend increases in the

contribution rate during the term of the CBA to maintain a stated

reserve in the UTF is simply a reservation of a "right to negotiate

about certain employment terms and conditions" in the future that is

not subject to arbitration.    See Argument III A 1, Plaintiff's

Memorandum at 5-7.

(3)     Even if the language in the CBA requires the parties to agree on a

mid-term increase in contributions, the language precludes the Union

from arbitrating the dispute because the CBA's language commits the

dispute to deadlock arbitration under the provisions of the UTF's

Trust Agreement. See Argument III A 2, Plaintiff's Memorandum at 7-11.

(4)        "The Union is attempting to circumvent the bargaining process and Article XXII's procedures by using the grievance and arbitration process to strong arm the Association into a mid-term modification of the CBA" but the arbitrator "lacks power to unilaterally increase the Association's contribution levels." See Argument B, Plaintiff's Memorandum at 12-13.

## DEFENDANTS REPLY

Plaintiff's Memorandum is devoid of any assertion that the Employer Association disputes any of the facts described in the previously filed Defendant's Memorandum of Law in Support of Motion to Dismiss (herein Defendant's Memorandum"). More importantly, Plaintiff's Memorandum is devoid of any argument predicated on the actual text of the CBA. As described in detail in Defendant's Memorandum, substantive arbitrability is determined by examining the text of the collective bargaining agreement, and in particular the language of the grievance and arbitration clause, the language of the agreement in dispute and any other part of the agreement which a party asserts makes the dispute not subject to the arbitration clause.

The utter failure of Plaintiff's Memorandum to make even one argument based on a close textual analysis of the CBA belies the Employer Association's position. Instead, the Court is offered a free wheeling exposition that simply keeps repeating the Employer Association's position as alleged in the Complaint about the dispute supposedly not being arbitrable under the CBA and only so under the Trust Agreement's deadlock provisions.

12183-1

Plaintiff's argument is supported by a legal analysis that cites a plethora of cases, none of which are really relevant to resolving the matter before the Court (other than perhaps, the cases used to set forth the standard for the Court to use in deciding a motion to dismiss). The bulk of what follows herein deals with the cases cited by the Employer Association in Plaintiff's Memorandum.

The dispute between the Union and Employer Association is clearly subject to arbitration under the terms of the CBA. The CBA's broad arbitration clause pertains to every dispute over every provision in the CBA. Indeed, the grievance and arbitration clause even mentions that matters about contributions to the UTF are not subject to the time limitations's in the CBA,[1] There can be no doubt that disputes over Article XXII of the CBA – the article covering the obligation to make contributions to the UTF – are subject to binding arbitration under the CBA, unless there is specific language in the article which overrides the reach of the arbitration clause.

The Employer Association asserts that there is such specific language in Article XXII of the CBA, but the Article's language does not support such an assertion. The Employer Association's entire argument – and every aspect thereof – rests on reading into the language of the Article words and concepts that do not exist in the provision. Therefore, the Court should dismiss the instant Complaint.

The sentence in Article XXII of the CBA relied upon by the Employer Association for its position merely states: "Provision has been made for the selection or

---

[1]    The Employer Association would read this sentence as only pertaining to "individual employee claims concerning an alleged failure to make required contributions for that employee," Plaintiff's Memorandum at 9, but the language does not support this proposition. Indeed, there is no language in the CBA limiting the language in this manner.

appointment of a neutral person or impartial umpire in the event that Trustees appointed by the Association and Trustees appointed by the Union deadlock on the administration of the United Teamster Fund." Whether read in isolation or in the context of the Article, this language simply does not evidence any intention by the Union and Employer Association to preclude arbitration under the CBA and to commit arbitration of the instant dispute to the deadlock provision of the UTF's Trust Agreement.

Plaintiff's First Argument

The Employer Association's assertion that the CBA precludes arbitration of the instant dispute is unsupported by the cases it relies upon for articulating its position. For example, the Employer Association cites *Maryland Casualty Co. v. Realty Advisory Board on Labor Relations*, 107 F.3d 979, 983 (2d Cir. 1997) for the proposition that this court can enforce a contractual provision which excludes arbitration of a particular dispute. But unlike the collective bargaining agreement in *Maryland Casualty*, in the instant matter there is no clause in the CBA which excludes the dispute from arbitration. Where no explicit exclusion exists, courts have recognized that the holding in *Maryland Casualty* does not apply, and denied injunctions staying arbitration. *See e.g.*, *Local 100, Transport Workers Union, AFL-CIO v. Rosen,* Index No.06 Civ. 4787 (RPP), 2007 U.S. Dist Lexis 51150, *21 (S.D.N.Y. July 13, 2007).

The Employer Association's reliance on *Gangemi v. Syracuse Draftsmen's Association*, 532 F.2d 861, 866 (2d. Cir. 1975) is also misplaced because the case concerns an arbitration clause very different from the instant one. In *Gangemi* the court pointed out that the collective bargaining agreement "does not contain the "broad" or "standard" mandatory arbitration clause common to many collective bargaining

agreements". Instead the contract required the employer's written consent to arbitrate. Here, by contrast, the CBA has the "standard" language mandating arbitration of disputes.

The Employer Association's reliance on *New Hampshire Insurance Co. v. Canali Reinsurance Co.,* No. 03 Civ. 8889 (LTS), 2004 U.S. Dist LEXIS 6180 (S.D.N.Y. Apr. 12, 2004) is also misplaced. In *New Hampshire*, there was an arbitration clause described by the court as "narrow" which did not make a breach of contract subject to arbitration. Indeed, the contract explicitly provided for litigating, not arbitrating, the dispute.

The Employer Association's reliance on *Adirondack Transit Lines, Inc. v. United Transportation Union, Local 1582*, 305 F.3d 82 (2d. Cir. 2002) is also misplaced. *Adirondack* is concerned with an action by an employer against a union over an alleged breach of the collective bargaining agreement and whether arbitration of the dispute was available under the terms of the collective bargaining agreement and therefore the exclusive remedy. The Second Circuit ruled the employer could bring the action because he was precluded under the language of the collective bargaining agreement from filing grievances over alleged breaches of the agreement and only grievances could go to arbitration. The holding in *Adirondack* has no bearing on the instant matter because the Employer Association has not contested the Union's ability to grieve the Employer Association's inaction.[2] The Second Circuit's decision in *New York News, Inc v. Newspaper Guild of New York*, 927 F.2d 82 (2d. Cir. 1991) also fails to support the Employer Association's position because it involves a failure of the Newspaper Guild to

---

[2]    The complaint is devoid of any allegation that the Union cannot grieve the dispute. Indeed, the grievance clause explicitly provides for grievances over welfare contributions.

first file a grievance as a predicate to being able to arbitrate a dispute over the termination of the agreement. In addition, the Second Circuit in *New York News* found that the dispute over the employer's termination of the agreement was not subject to arbitration because grievances could only be filed under the contract for disputes over the application or interpretation of the collective bargaining agreement. Needless to say, the instant matter does not concern the termination of the CBA.

Not only is the Employer Association's reliance on *Woodcrest Nursing Home v. Local 144, Hotel, Hosp., Nursing Home and Allied Services Union*, 927 F.2d 894 (2d. Cir. 1986) misplaced, the case provides a clear example of when language found else where in a collective bargaining agreement can override a broad arbitration clause. In *Woodcrest* the arbitration clause was overridden by specific language (which the court described as clear and unambiguous) making the entire contract inapplicable to a certain class of employees (called non-slotted employees) except for three provisions requiring that these employees pay union dues and be covered for pension and welfare benefits. Because Local 144 sought to arbitrate disputes on behalf of this class of employees which implicated provisions in the contract not covered by the three exceptions, the Court ruled the subject matter of the dispute was barred from arbitration. In the instant case, by contrast, the language relied upon by the Employer Association does not clearly and unambiguously make the grievance and arbitration clause inapplicable to the instant dispute. [3]

---

[3] The Employer Association also cites *Aramony v. United Way of America*, 254 F.3d 403, 413-414 (2d Cir. 2001) and *Country of Suffolk v. Alcorn*, 266 F.3d 131 (2d. Cir. 2001); and *Loughman v. Unum Provident Corp.*, 536 F. Supp. 2d 371 (S.D.N.Y. 2008) and *Houlihan Lokey Howard & Zukin Capital, Inc. v. Protective Group, Inc.*, 596 F. Supp. 2d 1230 (S.D.N.Y. 2007) for the proposition that a contract's broad arbitration clause must be limited by more

Plaintiff's Second Argument

While not alleged in the Complaint, the Employer Association now contends in its Memorandum that the instant dispute is not arbitrable on the grounds that Article XXII's language merely represents a reservation of rights by each party to negotiate in the future over contributions to the UTF. The relevant text of the CBA undermines and contradicts this argument because it never refers to a reservation of a right to negotiate about the issue. The CBA provides:

> The Association and the Union shall have the right, during the term of this Agreement, to instruct their respective Trustees [on the UTF] to increase the contribution or reduce the welfare benefits in the event that the surplus in the Fund declines below $750,000, it being the intention of the parties that the Fund shall maintain a surplus of approximately $750,000 during the term of this Agreement.

> In making their determination with respect to contributions, the parties shall be guided by the Accountants and Actuaries of the Fund.

Article XXII, CBA at 14.

Nowhere does the language of the clause provide for negotiations between the parties. Instead, the language requires the parties to do what is necessary during the term of the existing CBA with respect to raising contributions (or lowering benefits) to ensure the UTF remains solvent. Labor relations practitioners would recognize this clause as a form of "maintenance of benefits" language which operates to ensure that an employer

---

specific terms limiting arbitration of particular matters. See Plaintiff's brief at p. 5. Leaving aside for the moment whether the proposition may be true as a general principal for interpreting collective bargaining agreements (and all the cited cases are not concerned with collective bargaining agreements), it is clearly inapplicable to the matter at hand. There is no specific language in the CBA limiting arbitration of the instant dispute. It simply does not exist.

pays what is needed to maintain the level of benefits, or in this instance, the solvency of the UTF.

Even if the CBA provided explicitly for negotiations by the parties to maintain the UTF's reserves at $750,000, in such an instance the negotiations over a higher rate would legally be different from the nature of negotiations for a new agreement; rather, they would be negotiations to implement the previously made promise to pay an increase, which means the negotiations might be about the size and the manner of the increase, but not over the necessity for an increase. *See e.g., Chicago Graphic Arts Health and Welfare Fund v. Person Smurfit Corp.*, No. 94 C 1957 (JAN), 1995 U.S. Dist. LEXIS 14228 (N.D. Iii. Sept. 27, 1995) (ERISA action by welfare fund to enforce obligation by employer under collective bargaining agreement's maintenance of benefits ("MOB") clause to increase contributions to the fund).

If the parties desired to reserve the right to negotiate a new agreement over the matter they easily could have written the language to provide for it. The language in the contract at issue in *United Artists Eastern Theatres, Inc. v. Local 640, Int'l Alliance of Theatrical Stage Employees & Moving Picture Machine Operators of the United States and Canada*, 465 F. Supp. 709 (E.D.N.Y. 1979), which the Employer Association cites for the proposition that courts will not order arbitration of a matter reserved to negotiations, shows what such a clause looks like. In *United Artists* the parties made an agreement to settle a strike that provided for future "meet[ings] … with the purpose of reaching an understanding … with respect to the terms and conditions that will apply to the" automated projection booths. *Id.*, 465 F. Supp. at 710. By contrast, the instant CBA evidences the intention of the parties to promise to raise contributions in accordance with

the guidance provided by the UTF's actuaries and accountants in order to maintain a reserve of $750,000 in the UTF.[4]

Plaintiff's Third Argument

The Employer Association argues that even if it did make a promise to raise contributions to preserve the solvency of the UTF, the arbitration is still precluded because the CBA mandates it take place pursuant to the deadlock provisions of the UTF's Trust Agreement. This argument is unsupported by the actual language of the CBA. Moreover, the cases relied upon by the Employer Association fail to support its argument.

The Employer Association cites *Kim v. Fujkawa*, 827 F.2d 1401 (9th Cir. 1987), which is cited in the Plaintiff's Memorandum at 8 for the incorrect proposition of law that fund trustees must always first consider actuarial data before arbitrators or courts can enforce a collective bargaining agreement's arbitration clause. In *Kim*, the Ninth Circuit was called upon to determine the interplay of particular language in a collective bargaining agreement triggering an employer's obligation to raise contributions with the dispute mechanism in the collective bargaining agreement and the deadlock provisions of

---

[4]    The language expresses the clear intention of the parties to jointly do what is necessary during the term of the current agreement to maintain a solvent UTF (reserves of $750,000). Under the language, neither the Union nor the Employer Association has the unilateral "right" to instruct trustees to raise contributions or reduce benefits. Instead, as set forth in the first nine words of the first sentence, this "right" is one that must be and can only be exercised jointly by the parties. The sentence, after all, does not provide that "[t]he Association and the Union shall **each** have the right ...."

The conclusion that the "right" to be exercised by the parties must be exercised jointly, is reinforced by the language of the second sentence which provides that there can be only one "determination" with respect to the amount of an increase in contributions. Thus, the second sentence begins "[i]n making their [(plural pronoun - meaning both)] determination [(singular)] with respect to contributions ...."

a fund's trust agreement. The fund's trust agreement was completely incorporated into the collective bargaining agreement. The fund's trustees had deadlocked over the issue of whether there was the necessity for a mid-contract-term increase in contributions. The litigation was over forcing reluctant trustees to participate in the deadlock arbitration.

In *Kim*, the particular language in the collective bargaining agreement triggering the employer's obligation to increase its contributions was the existence of unspecified "conditions" that "may arise [during the term of the agreement] requiring supplemental contributions ...." *Kim*, 827 F.2d at 1402. In <u>Kim</u>, the Ninth Circuit ordered the trustees' deadlock arbitration to go forward in order to determine whether the unspecified "conditions" did in fact exist.

By contrast, in the instant matter, the "condition" triggering the Employer Association's obligation to increase its contributions is clearly spelled–out in the collective bargaining agreement. And there is no dispute over it having been met. The CBA specifies that when the UTF's surplus is below $750,000 the Employer Association is obligated to recommend an increase in contributions. And there is no depute about the UTF being in debt by about $15 million.

In *Kim,* the trustees were deadlocked over an issue that had to be initially decided by them to trigger the collective bargaining agreement's provisions about increased contributions. In the instant case, however, the Employer Association is attempting to prevent resolution of a dispute under the CBA that must first be decided in order to determine the obligation of the UTF's Trustees to accept greater contributions from the Employer Association. Hypothetically, should the CBA's arbitrator "recommend" an increase in Employer Association contributions, and should the UTF's Trustees deadlock

over accepting such increased contributions, the deadlock provisions in the Trust Agreement will resolve the dispute among the trustees.

The Employer Association also relies upon *United Steelworkers of America v. Commonwealth Aluminum Corp.*, 162 F.3d 447 (6th Cir. 1998), but it is unhelpful to its position. In *Commonwealth Aluminum* the parties incorporated the terms of a benefit plan into the collective bargaining agreement. The plan provided for a benefit claim appeals procedure culminating with a determination by the plan administrator, which was explicitly to be final and binding on all parties. The plan further provided that a participant could seek a review of the plan administrator's negative determination by filing an action in court. When the union in *Commonwealth Aluminum* sought to arbitrate the plan administrator's determination pursuant to the terms of a broad arbitration clause in the collective bargaining agreement, the Court ruled the language of the plan made such determinations not substantively arbitrable. By contrast, nothing comparable exists in the instant CBA warranting a similar finding with regard to the Union's demand for arbitration.

The Employer Association's reliance on *International Longshoremen's Association v. New York Shipping Association, Inc.*, 403 F.2d 807 (2d. Cir. 1968), is misplaced because it is inapposite to its position. In *Longshoremen's*, the parties stipulated in collective bargaining to using the provisions in a fund's trust agreement to resolve any dispute over the employer's obligation under the collective bargaining agreement to raise its contributions to the fund. The fund's provisions called for a district court to appoint an arbitrator who would issue a final and binding decision. The Second Circuit described this arbitration clause as "not the usual one," *Id.*, 403 F.2d at 809, when

directing that the dispute be arbitrated in accordance with its provisions.  By contrast, the CBA's arbitration clause is quite standard and the parties have not stipulated in writing as they did in *Longshoremen's*, to use an "unusual" procedure involving the provisions of the UTF's Trust Agreement.

Plaintiff's Fourth Argument

The Employer Association's argument that the Union is attempting to circumvent collective bargaining and use the arbitrator to "strong arm" the Employer Association into modifying the current CBA is incorrect.  Its argument that the arbitrator is without the authority to issue a binding decision is also incorrect.

The Union seeks an arbitration to enforce the Employer Association's promise to pay for maintaining a $750,000 reserve in the UTF as set forth in the current CBA.  In the face of the Employer Association's denial that it has such an obligation in the CBA, any decision by an arbitrator based on the language of Article XXII of the CBA, which requires that the decision be guided by the UTF's actuary and accountant, would meet the test of being a decision that draws from the essence of the collective bargaining agreement.  *See United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 595 (U.S. 1960).

Final Issues

Two other aspects of Plaintiff's Memorandum warrant a response.  Plaintiff's Memorandum repeatedly refers to a "Labor-Management Committee."  See Plaintiff's Memorandum at 7, 8, 9, 10 and 13.  Assuming the reference is supposed to be to the "Labor-Management Grievance Committee" mentioned in the CBA's grievance and arbitration clause, the point of doing so is unclear.  As recounted in Defendant's

Memorandum, the Union asserts it satisfied this step in the grievance procedure by submitting the dispute to the Labor-Management Grievance Committee, while the Employer Association contends this cannot be so because it refused to participate. The Union sees the issue as a dispute over "procedural arbitrability," which is properly to be considered by the arbitrator and not the Court; but, in any event, because the Committee's decision is non-binding and only constitutes a recommendation to the parties, the existence of the Committee appears to be insignificant for deciding the issues before the Court.

Plaintiff's Memorandum also mischaracterizes the Union's position with regard to the nature of its grievance. Plaintiff's Memorandum at 3 states "the Union asserts, for the first time, that its grievance concerns an "amendment, supplement or modification to the CBA"…." citing page 10 of the Defendant's Memorandum as the source for the quoted text. Contrary to the Employer Association's mischaracterization of the Union's position and as Defendant's Memorandum makes clear, the quoted text is from the UTF's Trust Agreement and it concerns the authority of the UTF's trustees to agree to accept the recommendation of the Employer Association and Union to raise contributions. The grievance is a dispute over the meaning of the present CBA, not an effort to amend it.

## CONCLUSION

For the reason expressed herein and in Plaintiff's Memorandum we hereby respectfully ask the Court to grant the motion, dismiss the Complaint and order such other relief as it deems appropriate under the circumstances. Because of the nature of this dispute and the hardship that delay works on the UTF and its participants, the Union also asks the Court to expedite, if possible, its consideration of the motion.

Dated: June 23, 2008
     New York, NY

          Respectfully submitted,

          CARY KANE LLP

By: _____
          Larry Cary (LC 3352)
          Charles Pergue (CP 5619)
          Attorneys for Defendant Union
          1350 Broadway, Suite 815
          New York, NY 10018
          Tel.: (212) 868-6300
          Fax: (212) 868-6302

12183-1